UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) 20 C 2447 ) |
| TERRY L. GACA, and JANET L. WAYMAN, individually and as trustee of THE JANET L. WAYMAN TRUST, | ) ) ) ) |
| Defendants. | ) ) ) |

### MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Plaintiff Cambridge Mutual Fire Insurance Company's ("Cambridge") Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the Motion.

### BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

Cambridge brings this action seeking a declaratory judgment that it does not owe Defendants Terry Gaca and Janet Waymen (collectively, "Defendants") a duty to

defend an underlying lawsuit under the terms of their insurance policy. Thomas J. Frederick[1] brought the underlying lawsuit in Illinois state court, alleging Defendants maintained a boarding house and a parking facility for large trucks on their property (the "Underlying Suit"). The Underlying Suit alleges claims of public nuisance, conspiracy to create a public nuisance, and nine violations of City of Naperville ("Naperville") zoning ordinances under the Adjoining Landowner Act, 65 ILCS 5/11-13-15. Frederick seeks monetary damages and injunctive relief.

Defendants' policy with Cambridge includes Homeowner's Liability Insurance and Personal Umbrella Liability Insurance (the "Policy"). As is relevant here, the Policy provides:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" or "personal injury" caused by an offense to which this policy applies, we:
>
> > a. Will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

Dkt. # 38-1, p. 13. "'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services and death that results." *Id.* at 11. "'Property damage' means physical injury to, destruction of, or loss of use of tangible property." *Id.* at 12. "'Personal injury' means injury arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of right of private occupancy of a room, dwelling or

---

[1] Frederick was voluntarily dismissed as a defendant on August 11, 2020. Dkt. # 23.

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor . . ." *Id.* Finally, "'[o]currence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in: 'bodily injury' or 'property damage.'" *Id.*

The Policy also contains several exclusions. Coverage does not apply to:

1. "Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

> a. is of a different kind, quality or degree than initially expected or intended; or

> b. is sustained by a different person, entity, real or personal property, than initially expected or intended. . . .

2. "Personal injury":

> a. caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury". . . .

*Id.* at 14.

Based on these events, Cambridge brings this action alleging the Underlying Suit does not involve "property damage," "personal injury," or an "occurrence" under the Policy. Cambridge now moves for summary judgment under Rule 56.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The party opposing the motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." N.D. Ill. L.R. 56.1(b)(1), (3).

## **DISCUSSION**

At the outset, we address some violations of the Local Rules governing motions for summary judgment. Defendants did not file a response to Cambridge's Local Rule 56.1 Statement of Material Facts. Cambridge, therefore, asks the Court to deem all its facts admitted. However, Cambridge did not comply with Local Rule 56.2, which requires parties moving for summary judgment against an unrepresented party to notify the unrepresented party of their obligations under Local Rule 56.1 and the potential ramifications for failing to comply with Local Rule 56.1. *See* N.D. Ill. L.R. 56.2. Cambridge also violated Local Rule 56.1 by not attaching the cited evidentiary material in its Statement of Material Facts. *See* N.D. Ill. L.R. 56.1(d)(3) (requiring evidentiary material to be attached to the statement of facts as numbered exhibits). A review of the

5

record, however, reveals there is no factual dispute, as our review is limited to the Underlying Suit's complaint and the Policy.

Moving to the merits of the Motion, the parties agree Illinois law applies. In Illinois, the construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311 (2006). An insurance policy is to be construed as a whole and requires the court to ascertain and give effect to the true intentions of the contracting parties. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002) (applying Illinois law). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153 (2004). However, "[a] policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." *Founders Ins. Co. v. Munoz*, 237 Ill.2 d 424, 433 (2010).

It is well-settled that in deciding whether an insurer has a duty to defend an action against the insured, a reviewing court must compare the allegations of the underlying complaint to the relevant portions of the policy. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 154 Ill. 2d 90, 108 (1992). If the underlying complaint alleges facts that fall "within or *potentially* within" the coverage of the policy, the insurer is obligated to defend its insured even if the allegations are "groundless, false, or fraudulent." *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991) (emphasis in original). The underlying complaint need only set forth sufficient facts to

6

establish a policy-covered offense. *OneBeacon Am. Ins. Co. v. City of Zion*, 119 F. Supp. 3d 821, 833 (N.D. Ill. 2015) (Kocoras, J.).

Also, the duty to defend arises "even if only one such theory is within the potential coverage of the policy." *Wilkin Insulation Co.*, 144 Ill. 2d at 73. An insurer may not justifiably refuse to defend an action against the insured "unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within the policy's coverage." *Id.* (emphasis in original). The burden is on the insured to prove a claim falls within the coverage of the policy. *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 2d 1005, 1008 (N.D.Ill.2012) (citing cases).

Cambridge asserts the Underlying Complaint does not allege an "occurrence" or "personal injury" as those terms are defined by the Policy.[2] We address each term in turn.

First, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. # 38-1, p. 12. Cambridge specifically argues there is no "accident." Illinois courts have defined "accident" for the purpose of insurance coverage disputes as "an unforeseen occurrence, usually an undesigned sudden or unexpected event of an inflictive or unfortunate character." *W. Am. Ins. Co. v. Mw. Open MRI, Inc.*, 2013 IL App (1st) 121034, ¶ 22 (cleaned up). The

---

[2] Cambridge also asserts the complaint in the Underlying Suit does not allege "property damage" as defined by the Policy. Because Defendants argue the Underlying Suit "alleges uniquely bodily injury, not damage to property" we do not address Cambridge's argument about property damage. Dkt. # 96, p. 2.

7

relevant inquiry is "whether the *injury* is expected or intended by the insured, not whether the *acts* were performed intentionally." *Id.* (emphasis in original). So, we ask "whether the person performing the acts leading to the result intended or expected the result. If the actor intended or expected the result, the event was no accident." *State Farm Fire & Cas. Co. v. Young*, 2012 IL App (1st) 103736, ¶ 26 (internal citation omitted).

In *Midwest Open*, the insurance company sought a declaratory judgment that it did not have a duty to defend a company that provided magnetic resonance imaging (MRI) services after it was sued by a competitor. 2013 IL App (1st) 121034, ¶¶ 1–2. The competitor alleged the defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act by engaged in a price fixing scheme to put competitors out of business. *Id.* at ¶¶ 23–24. The Illinois Appellate Court found the underlying complaint established defendants intended to put their competitors out of business, and therefore the underlying complaint did not allege an "occurrence" under the insurance policy. *Id.* at ¶ 24.

Here, the complaint in the Underlying Suit asserts public nuisance, conspiracy to create public nuisance, and violations of Naperville ordinances  The complaint alleges Defendants intentionally conspired to violate the public's rights and avoid enforcement of Naperville's ordinances. Further, the complaint establishes Defendants knew their use of the property as a boarding house and truck lot violated Naperville ordinances, and even sued Naperville to challenge the legality of the ordinances. Thus, like in

8

*Midwest Open*, the complaint in the Underlying Suit establishes the injuries were intentional, not accidental. Therefore, there was no "occurrence" as that term is defined in the Policy.[3]

Next, a "personal injury" is an "injury arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor . . . ." Dkt. # 38-1, p. 12. This phrase "quite plainly requires the invasion to be committed by the owner." *Admiral Indem. Co. v. 899 Plymouth Ct. Condo. Ass'n D&KK Real Est. Serv. Corp.*, 2017 WL 345559, at *7 (N.D. Ill. 2017) (Kennelly, J.). Thus, Defendants must be the "owner, landlord, or lessor" of the "room, dwelling or premises" where the alleged invasion occurred. *See id.* Because Frederick is the owner of the property that was "invaded," there is no "personal injury" alleged in the Underlying Suit. *See id.*

Defendants' reliance on *Avery v. GRI Fox Run, LLC*, 2020 IL App (2d) 190382, is inapposite. There, the Illinois Appellate Court determined nuisance allegations were personal injuries and therefore not barred by the Illinois Supreme Court's decision in *Moorman Manufacturing Company v. National Tank Company*, 91 Ill. 2d 69 (1982) (the "*Moorman* doctrine"). *Avery*, 2020 IL App (2d) 190382, ¶ 64. The *Moorman* doctrine precludes recovery for pure economic losses in a tort action. *Id.* at ¶ 55. *Avery*,

---

[3] Even if the Policy provided coverage for the Underlying Suit, coverage would be excluded under the Policy's exclusions for these same reasons.

9

though, did not involve an insurance policy or an insurance coverage dispute. Here, by contrast, the question is whether the allegations in the Underlying Suit involve personal injuries *as defined by the Policy*, not whether it generally alleges a personal injury. Thus, the Underlying Action does not allege a "personal injury," as that term is defined by the Policy.

Defendants raise several defenses: Cambridge did not satisfy a condition precedent under the Illinois Insurance Code prior to filing suit and Cambridge is estopped from denying coverage. We address each in turn.

Defendants first argue Cambridge's claims fail because it did not respond to their "inquiry of loss" within 21 days. Defendants point to Section 143d of the Illinois Insurance Code, which requires insurance companies to establish a customer affairs and information department and respond to written inquiries and complaints within 21 days. 215 ILCS 5/143d. Cambridge denied Defendants' claim after 26 days, so Defendants say Cambridge failed to follow the terms of Section 143d.

The guiding rule of statutory construction is to determine and give effect to the legislature's intent. *JP Morgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). If the language of the statute is unambiguous, the inquiry ends. *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 780 (2020). "The terms in a statute are not to be considered in a vacuum," so "the words and phrases . . . must be construed in light of the statute as a whole, with each provision construed in connection with every other section." *Corbett v Cnty. of Lake*, 2017 IL 121536, ¶ 27 (cleaned up). Additionally,

the statute must be read so that no term is rendered superfluous or meaningless. *JP Morgan*, 238 Ill. 2d at 461.

Section 143d by its terms applies only to inquiries and complaints, not to claims. An "inquiry" is a "request for information." *Inquiry*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/inquiry (last visited April 19, 2022). And a "complaint" is "an expression of grief, pain, or dissatisfaction." *Complaint*, Merriam-Webster, https://www.merriam-webster.com/dictionary/complaint (last visited April 19, 2022). But a claim is "[a] policyholder's formal report to an insurance company about a loss with a request for a payment based on the insurance policy's terms." *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019). So, the purpose of Section 143d is for insurance companies to establish a department to answer questions and respond to dissatisfied customers within 21 days. But it is not the job of that department to determine whether a loss is covered by a policy. Thus, the 21-day requirement applies only to issues handled by an insurance company's customer affairs and information department under Section 143d.

The conclusion that Section 143d does not apply to claims is supported by looking at other provisions of the Insurance Code. The Insurance Code requires insurance companies to settle claims within a reasonable time. *See, e.g.*, 215 ILCS 5/154.6; 215 ILCS 5/155. Section 154.6 makes it an improper claims practice to, among other things, fail "to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." 215 ILCS 5/154.6(i). Similarly,

11

Section 155 allows an insured to recover attorney fees in an action against an insurance company "for an unreasonable delay in settling a claim." 215 ILCS 5/155. Therefore, finding Section 143d requires insurance companies to settle claims within 21 days would effectively abrogate the language in these sections and the case law interpreting them.

So what Defendants attempt to classify as an "inquiry" is unquestionably a claim: Gaca wrote to Cambridge's agent, Joe Snyder, regarding the Underlying Suit, asserted the Underlying Suit presented a personal injury as defined by the Policy, requested coverage under the Policy, and stated "it is imperative Insured's Claim be submitted to Cambridge Mutual posthaste." Dkt. # 51, p. 16. Thus, Defendants' communication was a claim and Section 143d does not apply.

Defendants next raise three estoppel arguments. First, Defendants say Cambridge reserved $44,480.11 for their claim, which Defendants maintain is evidence Cambridge believed the claim was covered. Thus, Defendants argue Cambridge must be equitably estopped from denying coverage.

To establish equitable estoppel under Illinois law, Defendants must show:

> (1) [Cambridge] misrepresented or concealed material facts; (2) [Cambridge] knew at the time [it] made the representations that they were untrue; (3) [Defendants] did not know that the representations were untrue when they were made and when they were acted upon; (4) [Cambridge] intended or reasonably expected that [Defendants] would act upon the representations; (5) [Defendants] reasonably relied upon the representations in good faith to [their] detriment; and (6) [Defendants] would be prejudiced by [their] reliance on the representations if [Cambridge] is permitted to deny the truth thereof.

*Geddes v. Mill Creek Country Club*, 196 Ill. 2d 302, 313–14 (2001) (citing *Vaughn v. Speaker*, 126 Ill. 2d 150, 162–63 (1988)). The purpose behind this doctrine "is that where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Id.*

Here, Defendants fail to establish equitable estoppel. Defendants have not shown Cambridge misrepresented any material facts. The undisputed facts show Cambridge denied coverage at all times. It did not, for example, indicate to Defendants that it would provide a defense then suddenly change course and deny coverage. The loss run provided by Defendants does not show Cambridge ever indicated to Defendants the Underlying Suit was covered by the Policy. Nor do Defendants show they detrimentally relied on any misrepresentation by Cambridge. Accordingly, Defendants' first estoppel argument fails.

Second, Defendants say Cambridge is estopped from denying coverage because an insurance company cannot deny coverage and file a declaratory judgment suit. But this argument is unsupported by the facts and applicable law. In Illinois, it is true, as Defendants say, that an insurance company cannot simply deny coverage and refuse to defend or indemnify; it must defend under an express reservation of rights or file a declaratory judgment action. *See Waste Mgmt., Inc. v. Int'l. Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 207–08 (1991). But Cambridge followed the required procedure; it denied

13

coverage and filed this declaratory judgment action. Moreover, the estoppel doctrine does not apply where the insurer has no duty to defend. *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 151 (1999). "In other words, the estoppel doctrine cannot create coverage where none existed in the first place." *Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶ 48. Because Cambridge followed Illinois law and does not have a duty to defend under the Policy, Defendants' second estoppel argument fails.

Third, Defendants argue Cambridge is estopped from denying coverage because it waited too long to file this action. The Underlying Suit was filed in August 2019, while this action was filed in March 2020. But we need not determine if this delay was unreasonable because, as with Defendants' second estoppel argument, the doctrine does not apply if the insurer did not breach its duty to defend. *See St. Paul Fire and Marine Ins. Co. v. Vill. of Franklin Park*, 523 F.3d 754, 756 (7th Cir. 2008). Accordingly, Defendants' third estoppel argument fails.

## **CONCLUSION**

For the reasons mentioned above, the Court grants Cambridge's Motion for Summary Judgment (Dkt. # 95). Civil case terminated. It is so ordered.

Dated: 05/17/22

                                                       Charles P. Kocoras
                                                       United States District Judge